IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-95-142-2 |
| | § | CIVIL ACTION NO. H-04-2093 |
| RICARDO RIOJAS, | § | |
| | § | |
| Defendant-Movant. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION TO DISMISS, AND DENYING
MOVANT'S § 2255 MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Ricardo Riojas'§ 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 5357),[1] Preliminary Memorandum of Points and Authorities (Document No. 5472),

the United States' Response and Motion for Summary Judgment (Documents No. No. 5454), and

Movant's Response to the United States' Motion for Summary Judgment (Document No. 5508).  In

addition, Movant filed a Motion to Amend and Supplement § 2255 Motion to Vacate, Set Aside or

Correct Sentence (Document No. 5438), to which the United States filed a Response (Document No.

5453).  After reviewing the parties' submissions, the record of the proceedings before the District

Court in the underlying criminal case, and the applicable case law, the Magistrate Judge

RECOMMENDS for the reasons set forth below, that the United States' Motion for Summary

---

[1] Ricardo Riojas' Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-04-2093, and at Document No. 5357 in Criminal action H-95-142. References hereafter will be to the criminal document numbers unless otherwise indicated.

Judgment (Document No. 5454) be GRANTED, that Movant's Motion to Amend and Supplement

§ 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 5438) and  § 2255 Motion

to Vacate, Set Aside or Correct Sentence  (Document No. 5357) both be DENIED, and that this

§ 2255 proceeding be DISMISSED with prejudice.

I.      **Procedural History**

        On October 10, 1996, a federal grand jury charged Ricardo Riojas ("Riojas") and 78 co-

defendants in a 197-count sixth superseding indictment with various violations involving narcotics

distribution, money laundering, structuring to evade currency reporting requirements, failure to file

tax returns, aiding and abetting the use of a communication facility in the commission of a felony

narcotics offense, travel in interstate and foreign commerce in aid of a racketeering enterprise,

obstruction of justice, and continuing criminal enterprise (Document No. 19).

        On April 17, 1998, Riojas pleaded guilty, pursuant to a written plea agreement to: conspiring

to launder money, in violation of 18 U.S.C. § 1956(g), (h) (Count 5), and engaging in a continuing

criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count 89) (Documents No. 2645,

2644).  As part of the plea agreement, Riojas waived his right to appeal the sentence, agreed to the

forfeiture of assets, and agreed to cooperate with the United States.  (Document No. 2645, ¶ 1, 9-12).

The Government, in exchange for Riojas' plea, agreed to: dismiss the remaining counts of the

superseding indictment, withdraw the notice of enhancement,  and not to oppose a three point

reduction for acceptance of responsibility should such a recommendation be made by the Probation

Department.  Also, the written plea agreement carried the potential for a sentencing departure under

U.S.S.G. § 5K1.1.  (Document No. 2645, ¶ 1, Document No. 2713, Transcript of April 17, 1998,

Rearraignment Hearing, p 13-14).  In addition, the written Plea Agreement set forth the manner in

which Riojas' sentence would be calculated, and the penalties for the offenses, to which he agreed

to plead guilty, as follows:

> 2.  The penalty for a violation of Title 21 United States Code, § 848 includes a term of imprisonment of a minimum of twenty (20) years to life, a fine of Two (2) Million Dollars and a period of supervised release of at least three (3) years.  The penalty for a violation of Title 18, United States Code, §§ 1956(g) and (h) is up to twenty (20) years in prison and a fine of up to Five (5) Hundred Thousand Dollars and (3) years of supervised release.  The defendant is not eligible for parole.

> \*                                          \*

> 8.  The defendant is aware that his sentence will be imposed in accordance with the *Sentencing Guidelines and Policy Statements*.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offenses to which the defendant pleads guilty.  The defendant understands that the sentence to be imposed is discretionary with the sentencing judge and further understands that if the judge imposes a sentence up to the maximum established by statute, the defendant cannot for that reason alone, withdraw his guilty plea and will remain bound by all the obligations of this agreement.

> \*                                          \*

> The defendant understands that the guideline range under the Sentence Guideline is determined by the Probation Department Presentence Division and that determination is not part of this agreement.

> \*                                          \*

> 16.  Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office.  Likewise, the decision to file or decline to file a motion under Section 5K1.1 of the Sentence Guidelines rests solely with the United States of America, whose judgment in that regard is final.  (Document No. 2645).

As to the agreement by Riojas to fully cooperate with the Government, the plea agreement states in

pertinent part:

> The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentence Guidelines.  The defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney.  To that end, the defendant agrees to fully

cooperate with the United States of America and agrees to make full, truthful and complete disclosure to the United States concerning his knowledge of all persons and aspects of the trafficking in controlled substances, including any and all information, crimes or offenses related thereto as well as any information that is deemed of interest to the United States Attorney for the Southern District of Texas, the Department of Justice or any other government agency or department. The defendant further agrees to provide the United States Attorney for the Southern District of Texas any and all photographs, documents, papers, accounts, records or computer information they deem necessary whenever and wherever requested.

The defendant agrees to provide full and truthful responses to all questions asked of him and will voluntarily disclose complete information and knowledge regarding all matters of interest to the United States, to provide truthful and accurate information and testimony during any judicial or Grand Jury proceeding, if asked, and does not specifically waive his Fifth Amendment privilege against self-incrimination for the purposes of this agreement. Any false statements made by the defendant to the Grand Jury or during any court hearing can and will be prosecuted. The defendant agrees to voluntarily meet with local enforcement whenever and wherever requested.

*             *

Should the United States decline to file a motion based on substantial assistance, the defendant cannot, for that reason, withdraw his plea of guilty but will remain bound by this agreement.   Failure of the United States to file a motion for departure is not grounds for withdrawal of the guilty plea or an appeal.  Failure of the Court to grant a motion for departure under 5K1.1 is not grounds for withdrawal of a guilty plea and defendant will remain bound by this agreement.

*             *

The defendant understands and agrees that his sentencing will be deferred until it is determined that substantial assistance has or has not been rendered under the terms of this agreement.  (Document No. 2645).

At Riojas' April 17, 1998, Rearraignment hearing,[2] the Court engaged in an extended colloquy to ensure that Riojas had reviewed the written Plea Agreement, had discussed it with his attorney, and that he understood the charges against him, the minimum and maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be

---

[2] At this proceeding, the following defendants besides Riojas were rearraigned:  Roberto Riojas, Ramiro Riojas, Arcelia Riojas and David Cantu.  All references herein are to Ricardo Riojas.

calculated. (Document No. 2644, Transcript of Rearraignment Hearing, Document No. 2713). With respect to Riojas' understanding of the plea agreement, including the minimum and maximum penalties, the elements of the crimes to which he was pleading, and the calculation of his sentence, the following exchanges took place between Riojas and the Court regarding Riojas' understanding of the plea agreement:

> Mr. Clark: As to Mr. Ricardo Riojas, he, as well, would plead to two counts, count 89 and count 5. Count 89 is a C.C.E. count. Count 5 is the money laundering conspiracy. The remaining counts would be dismissed. The Government would not oppose the three-point reduction should it be recommended by the probation department. Potential 5K1 language. And, also, enhancement to notice would be withdrawn. And agreement to forfeiture in that, as well.

> \*                                        \*

> The Court: Ricardo Riojas, is that a fair summary of your plea agreement?

> The Defendant: Yes, ma'am.

> \*                                        \*

> The Court: Okay. I want to now go over the punishments that you are facing, the maximum punishment that each of you are facing as a result of your plea of guilty this morning.

> \*                                        \*

> All right. Next, we have Ricardo Riojas. You have indicated that you wish to plead guilty to count 89 of the indictment, the continuing criminal enterprise count, in violation of 21 United States Code, Section 848. Again, that penalty is imprisonment for a minimum mandatory of 20 years and up to life, and/or a fine of up to $2 million.

> And then count 5 is imprisonment of up to 20 years and/or a fine of up to $500,000 or twice the proceeds of the money laundering–whichever is more?

> Mr. Clark: Yes, your Honor.

> The Court: — Whichever is more. And then there would be, for each of the two counts, there would be three years supervised release, with the conditions of supervised release which you would have to follow or you could be subject to being brought back into court, found that you've violated those conditions, and then

sentenced to some additional time in addition to the original sentence. And then there would be a hundred dollars per count of the conviction, for a total of $200.

Do you understand those are the maximum possible penalties you're facing as a result of your plea of guilty this morning?

The Defendant: Yes.

*                                              *

The Court: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine how the sentencing guidelines apply in your case.

*                                              *

Ricardo Riojas?

The Defendant: Yes.

*                                              *

The Court: Do each of you understand that I will not be able to determine what your guideline sentence is until after the probation officer has made an independent evaluation and investigation concerning our case?

*                                              *

Do you understand that, Ricardo Riojas?

The Defendant: Yes, ma'am.

*                                              *

The Court:   And after the probation officer has made that investigation and assessment, he or she will write a report in which certain recommendations are made, certain factual findings are made, and I will be given a copy of that report in order to aid me to determine what your sentence should be in this case. And you and your attorneys will be given a copy of the report, the government will be given a copy of the report, and you and the government will be given a copy of the report, and you and the government will be given an opportunity to object to any findings that are made in the report. And after the objections have been made, we will have a sentencing hearing. And at that sentencing hearing I will address any objections that have been made and rule on those objections.

I will also at that point consider any motions that the government may file, any motions that your lawyers may file, any recommendations that the government may make. Some of the motions that the government may file or recommendations that the government may make may be a part of your plea agreement.

So, for example, if there is in your written plea agreement an agreement by the government that under certain circumstances and subject completely to their discretion, they may determine that you deserve a 5K1 motion, it would be possible that that could happen, if the government does make that determination and files a 5K1.1 motion for reduction, I am not bound by that motion. In other words, I will consider that motion just as I would consider any other motion. And just because that agreement is in your plea agreement, I am not bound to grant the government's motion if, in their sole determination, they should decide to file such a motion.

                        *                                          *

Ricardo Riojas?

The Defendant:  Yes, ma'am.

                        *                                          *

The Court:    And, for example, the government also may make certain recommendations to me. They may make recommendation – for example, I think one of you, and I've forgotten which one, you can help me on this, Mr. Clark, there is an agreement to withdraw the enhancement notice.

Mr. Clark:  That would be Mr. Ricardo

The Court:  Ricardo Riojas.

                        *                                          *

That's just one recommendation. There may be other recommendations that the government makes as part of the plea agreement they have with you. And I just want to make sure you understand that I'm not bound to accept any recommendation that the government makes at the time of sentencing.

                        *                                          *

Do you understand that, Ricardo Riojas?

The Defendant:  Yes, ma'am.

                        *                                          *

And I want you also to understand that I don't have any idea what your sentence will be at this point; that I will have to not only consider what the probation officer's report says, I will also have to consider what the government says at the time of sentencing, when they make any motions that they may choose to make or any recommendations they may choose to make.  I will also have to consider any objections any of you may make to the probation officer's presentence report.  And there will be a variety of things that I will look at and consider before I determine what your sentence will be.

So I don't want you to think that I know what your sentence is this morning, because I have no idea what that report's going to say or how I'm going to rule on any motions or recommendations or objections that are made in your case at the time of sentencing.

                      *                      *

Do you understand that, Ricardo Riojas?

The Defendant:  I do, ma'am.

                      *                      *

The Court:  All right.  And in your discussions with your attorneys, you may well have reached an estimate of what you think you're going to get in the case based upon the plea agreement and also just your evaluation of the guidelines and of just the circumstances of your case.  And it could be that your estimate, the estimate that you and your attorneys have arrived at, may be different and may be less than the sentence that I actually give you.  In other words, I may reach a determination that your sentence should be more than the estimate that you have reached when you've discussed the case with your attorneys.  And I want you to understand that if my sentence is more severe than the one you're expecting right now, as we're here today, that you will not at that point be given an opportunity to withdraw your plea of guilty.

                      *                      *

Do you understand that, Ricardo Riojas?

The Defendant:  Yes, ma'am.

                      *                      *

The Court:  The essential elements of the crime, the parts of the crime, the parts that the government would have to prove to the trier of fact beyond a reasonable doubt before that trier of fact could find you guilty of that crime, and the essential elements

of this money laundering conspiracy, violation of 18 United States Code, Section 1956, are as follows:

And I believe all of you but David Cantu are wishing to enter a plea of guilty to that count.

First of all, that there was an agreement between two or more persons and that each of you was a person who was a part of that agreement.

Second, that that agreement was to knowingly conduct a financial transaction, and that that financial transaction affected interstate commerce; and that that financial transaction involved the proceeds of a specified, unlawful activity – and in this case, that unlawful activity would be drug trafficking.

                          *                                   *

And that each of you had the intent to promote the carrying on of the specified unlawful activity knowing that the funds represented some form of unlawful activity.

                          *                                   *

Do you understand, Ricardo Riojas, that those are the essential elements of count five of the indictment?

The Defendant:  Yes, ma'am.

                          *                                   *

The Court:  All right.  So I think in order to streamline this, I'm going to ask Roberto Riojas, Ricardo Riojas and Ramiro Riojas to listen to these essential elements because for each of you, you are each charged in a separate count with the continuing criminal enterprise, but the essential elements of the crime would be the same.

So for Roberto Riojas, it would be count 90.  For Ricardo Riojas, it would be count 89.  And for Ramiro Riojas, it would be count 91.  So these would be the essential elements of each of those counts.

And they're each in violation of 21 United States Code, Section 848.

The first element is that there is a violation of federal narcotics law that has a felony punishment.

Second, and that violation is a part of a continuing series of violations of the narcotics laws, and that it was undertaken by each of you in concert with five or more other persons.  And that each of you is an organizer, manager or supervisor, and that

each of you obtained substantial income or resources from that series of violations of the narcotics laws.

                        \*                                      \*

Do you understand, Ricardo Riojas, that those are the essential elements of count 89 of the indictment?

The Defendant:  I do. (Document No. 2713, pp. 13-16, 19-20, 22-28, 34-37)

Further, the Government outlined what the government was prepared to prove had the case proceeded to trial:

> Your Honor, through the use of court-authorized wire intercepts, confidential sources, undercover agents, surveillance, the execution of search warrants, the actual seizures of narcotics, and codefendant testimony, it would be shown that Roberto Riojas, Ricardo Riojas, and Ramiro Riojas at a time between sometime between '86 and '96 were part of an organization that transferred marijuana from Mexico to the Starr County Area, and then from Starr County up to Houston and other states besides Texas.

> At points during this operation they each either directed, managed or supervised more than five individuals and received substantial resources or income from their activities in marijuana trafficking.

> Roberto, Ricardo and Ramiro Riojas recruited individuals, such as Jose Santos Trevino, Robert Rosa, Herbert Ross Watkins, [Z]argosa Sandoval, Federico Perez III, Pablo Gonzalez, Jr., and others, to transport shipments of marijuana from the Starr area to the Houston area.

> All three of the individuals, Ricardo, Roberto, and Ramiro Riojas coordinated and directed the activities of these individuals in order to insure the successful transportation and distribution of the marijuana.

> Ricardo, Roberto, Ramiro and others also personally oversaw the delivery of the marijuana to customers in Houston, Texas and elsewhere, and the subsequent collection of the currency generated by the sale of the marijuana.  They also utilized the services of other people to recover money, such as Alvaro Riojas, Renato Riojas, Roberto Riojas, Jr., Rene Gonzalez, and others.

> The proceeds from this organization, by Roberto, Ramiro and Ricardo Riojas, were utilized to purchase property, their residences, ranches, with these proceeds.

In 1995, a cooperating source was contacted by David Cantu, who worked for Roberto Riojas, to drive a load of marijuana to Chicago for the Riojases.  The confidential source had numerous meetings and conversations with Mr. Cantu and/or the Riojases to coordinate and plan the transportation of the marijuana.

Approximately 707 pounds of marijuana was taken by the confidential source to Chicago.  It was obviously seized by police officers but it was reported back by the confidential source to the Riojases and Cantu that the police had seized the marijuana; it was missing.

*                                   *

As to Ricardo Riojas, your Honor, property 15A, this property was sold to Ricardo Riojas for approximately $8,000.  The currency represented proceeds from marijuana trafficking.  The property was titled in the names of Ricardo Riojas and codefendant, Jose Luis Cantu.  This property is the location of the Fronton Heavy Equipment, a business where the distribution of marijuana was planned and coordinated by various members of the organization, as well as where the proceeds from the sale of marijuana were delivered.

The money used to start this business was drug proceeds of about $22,000, I believe, you Honor.

Property 15B, this is about two-tenths of an acre, again sold to Ricardo Riojas for $800 in drug trafficking money.  This property is titled, again, in the name of Ricardo Riojas, Jose Luis Cantu, and this is called Fronton Heavy Equipment sales – or, sorry, it joins that property.  Again, it was purchased with drug proceeds.

Property 16, Ricardo Riojas paid approximately $9,000 in currency for this property.  This represented proceeds from marijuana trafficking.  The property was titled in the name of another individual and a codefendant's daughter.  This was done to conceal the ownership of the property.

Property number 24, Mr. Ricardo Riojas purchased this property and has added a building onto this property.  The currency that was used to add the building represents the proceeds of marijuana trafficking, and it's commonly known as the Fronton Car Wash and Body Shop, a front, a business in which marijuana operations were planned and coordinated by various members of the organization, as well as where proceeds from the sale of marijuana were delivered.  This is also a location where vehicles were outfitted with special compartments to transport the marijuana.

And I believe the phone was also intercepted here, discussing the delivery of the marijuana at this location.

Property Number 27, this is the residence of Ricardo and Lilia Riojas.  This location was also a business where Mr. Riojas helped to coordinate the day-to-day operation of the narcotic trafficking.

Property Number 29, again, Mr. Ricardo Riojas purchased this property with the proceeds from marijuana trafficking.  The property is in the name of Mr. Ricardo Riojas and his wife.  The residence built on the property was built with proceeds of marijuana trafficking activities.

It is also known as the residence of Rene Gonzalez and Irela Yvette Riojas Gonzalez.  And it's a location where planning to distribute marijuana took place to Detroit, Michigan and elsewhere.

Property Number 36, commonly known as the Golden R Meat Market, is a business where the activities of marijuana trafficking were planned and coordinated; also where wire intercept occurred about the marijuana trafficking.  The property was purchased with $25,000 in U.S. currency.  The U.S. currency was proceeds from the marijuana trafficking.

In addition, after the initial purchase of the property, Ricardo Riojas constructed the Golden R Meat Market, which is a gas station and convenience store, approximately eight months later for approximately $200,000.  The Golden R Meat Market was used as a location where distribution of marijuana was planned and coordinated by various members of the organization. (Document No. 2713, pp. 39-40, 42-45).

As to Riojas' own version of his  role in the offenses, the following exchanges took place between

the Court and Riojas:

The Court:  Okay.  Ricardo Riojas, can you tell me in your own words what you did?

The Defendant:  The same.

The Court:  The same as–

The Defendant:  The same.  The store, I am paying.  I still owe on it, the store.

The Court:  You still owe on which store?

The Defendant:  The Golden R.

The Court:  Okay.  Where did the money come from to put the down payment on it?

The Defendant:  First, I got $40,000 from Las Vegas, and I have proof of that.  Then I got $30,000 from express ticket, of which I have proof, as well.  And they signed a loan for me.

The Court:  Okay.  Did you make many payments with drug proceeds?

The Defendant:  For the store, no.  The rest, yes.

The Court:  So your position is that as far as the store is concerned, the Double R Meat Market (sic), that you paid for all of that with legal money?

The Defendant: Yes.

The Court:  But as far as the rest of what Mr. Clark says, is that correct?

The Defendant:  Yes.

The Court:  All right.  When I say "Mr. Clark says," I mean what Mr. Clark recited that he could prove?

The Defendant:  Yes.  (Document No. 2713, pp 48-49).

Based on the above colloquy, Riojas' guilty plea was accepted by the Court:

The Court:  It is the finding of the Court in the case of the United States versus Roberto Riojas, Ricardo Riojas, Ramiro Riojas, Arcelia Riojas and David Cantu, that each defendant is fully competent and capable of entering an informed plea; that the defendants are aware of the nature of the charges and the consequences of the plea, and that the pleas of guilty are knowing and voluntary pleas, supported by an independent basis in fact containing each of the essential elements of each of the offenses.  The defendants are now adjudged guilty of those offenses.  (Document No. 2713, p. 53).

Prior to sentencing a Pre-sentence Investigation Report ("PSR") was prepared (Document No. 4790), to which Riojas filed written objections (Document No. 4763).[3]  Pursuant to the PSR,

---

[3] Riojas objected to the relevant conduct section of the PSR, in particular, the quantity of marijuana he was held accountable for.  Riojas objected to ¶ 6, 8, 10, 13, 15, 17, 22, 24, 25, 27, 28, 29, 30, 31. 32, 33, 37, 38, 43, 44, 45-47, 49, 50, 51, 59, 60, 61, 62, 63, 64, 65-70, 71, 74-75, 79, 81, 82, 86, 87, 90, 91, 95, 99-101, 104, 105, 106, 107, 111, 117, 118, 119, 126, 179.  Riojas argued he should be held responsible for 6,000 pounds of marijuana, not for 223,000 pounds of marijuana.  In addition, Riojas objected to the absence of a three level adjustment for acceptance of responsibility.  Also, Riojas objected to a base offense level of 44, and a two level upward adjustment for obstruction of justice.  According to Riojas, his base offense should have been 35, and with a

Riojas' guideline sentencing range was calculated as follows:  (1) Riojas base offense was 44.  (2) Because Riojas willfully attempted to impede or obstruct justice in this case his offense level was increased by 2 levels pursuant to U.S.S.G. § 3C1.1.[4]  (3) With an adjusted base offense level of 44, and with a criminal history of category IV, Riojas had a guideline sentence of life imprisonment.

On May 8, 2002, Riojas, with new counsel,  Mr. Lansden, moved to withdraw his guilty plea. (Document No. 4787).  Riojas argued that he should be allowed to withdraw his guilty plea because of ineffective assistance of counsel.  The Government responded to Riojas' Motion to Withdraw Guilty Plea (Document No. 4864), and opposed Riojas' attempt to withdraw his guilty plea.

Riojas was sentenced on June 21, 2002.  (Document No. 4871, Transcript of Sentencing Hearing, Document No. 5046).  The record shows that Riojas' lawyer who negotiated his plea, Mauro Reyna, III, testified about his conversations with Riojas regarding the plea as follows:

> Mr. Reyna:  My understanding, Mr. Lansden, is that the Government made an offer and it was kind of a blanket offer to several of the defendants.  I believe on that day Mr. Riojas entered his plea, there might be like 10 or 15 or 20 people that pled that day, and it was an agreement that the lawyers had all negotiated with Ms. Lombardino.  Everybody pretty much was getting the same plea bargain at that time.

---

criminal history category of III, would have resulted in a guideline sentencing range of 210 to 262 months.

[4] Riojas' adjustment for obstruction of justice is set forth in the PSR, ¶ 187 as follows: Ricardo Riojas attempted to obstruct justice by concocting a false story for Jose Santos Trevino to tell to law enforcement officers about other individuals being the persons who hired him to transport the 147.2 pounds of marijuana seized on September 7, 1995.  In exchange for Trevino relating those falsehoods to authorities and keeping silent about Ricardo Riojas' involvement, Ricardo Riojas provided monetary compensation for Trevino and his family.  By telling the false story, it was hoped that Jose Santos Trevino would receive a reduced sentence.  On November 16, 1995, Jose Santos Trevino's Houston attorney, Luis Vallejo, met with HIDTA agents and a Harris County Assistant District Attorney and proffered the false story that Trevino had agreed to relate.  This scheme, however, was discovered during the Title III interceptions and was successfully thwarted by federal authorities.

*                                              *

Mr. Lansden:  Cooperation.  Did you talk to Ms. Lombardino about that as far as specifically your client went?

Mr. Reyna:  Yes, sir, I did.

Mr. Lansden:  What was your understanding about what it was that she would require to file a 5K1?

Mr. Reyna:  My understanding was that if Mr. Riojas was to be truthful, that he was going to get a 5K1 or be considered for a 5K motion.

Mr. Lansden:  And if the 5K1 would happen, what would be his sentence?

Mr. Reyna:  We were looking at – the agreement that we had was a 20-year term and then one-third downward departure if he was truthful.

Mr. Lansden:  So, did you convey that to your client?

Mr. Reyna:  Yes.

Mr. Lansden:  So, he was understanding that if he got the 5K1, he would get one-third off 20 years?

Mr. Reyna: Well, we had looked at his– at the particular portion of the indictment that he was going to plead to, and it looked like there was a cap of 20 years, which was a CCE count.  Everybody plead to the CCE count.

*                                              *

Well, we talked in general about the plea and we talked about debriefing and what effect that would have if the Government determined that he met that level.

*                                              *

Mr. Lansden:  And what did you convey to Mr. Riojas he would have to do to get the 5K1?

Mr. Reyna:  To be truthful.

Mr. Lansden:  All right.  Did you understand that at that time the Government would seriously give a 5K if he just told them the truth?

Mr. Reyna:  I thought they would.

Mr. Lansden:  Did you tell that to your client?

Mr. Reyna:  Yes.

Mr. Lansden:  Did they ever tell you at any time– were you aware– did you do discovery in the case before the plea?

Mr. Reyna:  Yes.

Mr. Lansden:  Did you ever listen to any of the Title III tapes that were done?

Mr. Reyna:  Yes.

           *                          *

Mr. Lansden:  Did Ms. Lombardino at any time tell you there was anything she was aware of at the time of the plea that she would not–that she wouldn't even consider giving a 5K1 to your client no matter what he said?

Mr. Reyna:  No, she never said that.

           *                          *

I was– what we did is we started the debriefing, we went over some ground rules. I felt like he was comfortable in discussing or being debriefed by the agents without my presence, had his consent, and I left.

           *                          *

Mr. Clark:  So, as far as you're concerned, he understood he importance of telling the truth?

Mr. Reyna:  Yes, sir.

           *                          *

Mr. Clark:  Okay.  And do you recall telling your client to be sure to tell the truth and be candid with the Government questions and so on?

Mr. Reyna:  Yes, sir.

Mr. Clark:  Okay.  Did your client agree to debrief with the Government under those circumstances?

Mr. Reyna:  Yes, sir.

&ast;            &ast;

Mr. Clark:  In connection with the Government's discretion of determining whether or not a 5K1 motion would be filed, you understood that the Government could exercise that discretion or decline to exercise and decline to file the motion based on reasons other than your client's truthfulness, correct?

Mr. Reyna:  Yes, sir.

Mr. Clark:  It's totally discretionary.  You understand that?

Mr. Reyna:  Yes, sir.

Mr. Clark:  And you communicated that to your client so he could understand it?

Mr. Reyna:  Yes.

      &ast;            &ast;

Mr. Lansden:  Am I correct when I say that, basically, when you presented this plea to him, the idea was, "If  you tell them the truth, you're going to get this 5K and you're going to get one-third off"?

Mr. Reyna:  Yes, sir.  (Document No. 5046, pp. 15-20, 24-25, 27-28, 32)

Thereafter, Judge Harmon found no basis upon which to grant Riojas' motion and denied his request to withdraw his guilty plea, overruled the objections of the Government and of Riojas to the PSR, and sentenced Riojas to life imprisonment.  Riojas was sentenced to life imprisonment as to count 89, and a term of 240 months' imprisonment as to count 5, the terms to be served concurrent.  In addition, concurrent terms of five years of supervised release were imposed.  Also, the Court imposed a fine of $100,000 and a special assessment of $200.  (Document No. 4871, Document No. 5046, pp. 35-37).  Upon the Government's motion, the remaining counts against Riojas were dismissed as well as a previously filed notice of statutory sentencing enhancement.  (Document No. 4876, Document No. 5046, p. 39).  Also, Judge Harmon entered a Second Amended Order of

Forfeiture against Riojas.   (Document No. 4870).   Judgment was entered on June 27, 2002.

(Document No. 4876).

Riojas appealed the denial of his motion to withdraw his guilty plea to the Fifth Circuit Court

of Appeals.   According to Riojas, he should have been allowed to withdraw his guilty plea because

it was not knowing or voluntary due to ineffective assistance of counsel.   On May 22, 2003, the Fifth

Circuit affirmed his conviction.   (Document Nos. 5156, 5157).   The Fifth Circuit wrote:

> He asserts that his plea was not knowing and voluntary because it was based upon his
> former counsel's erroneous advice that he was entering a plea that would result in a
> 20-year prison term, not life imprisonment, and that the Government was obligated
> to file a motion pursuant to U.S.S.G. § 5K1.1 in exchange for his complete and
> truthful debriefing.
>
> Riojas received all the information to which he was entitled under due process
> regarding his possible sentences, and any erroneous advice of counsel to the contrary
> cannot render his plea involuntary.  *See United States v. Brewster*, 137 F.3d 853, 858
> (5th Cir. 1998); *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991).
> Moreover, Riojas does not rebut the Government's assertion that it did not file a
> motion for downward departure on his sentence under U.S.S.G. § 5K1.1 because he
> was not truthful during his debriefing.  The Government had the right to exercise
> complete discretion whether to file such a motion.  *See United States v. Garcia-
> Bonilla*, 11 F.3d 45, 47 (5th Cir. 1993).
>
> In addition, for the first time on appeal, Riojas alleges that the Government
> negotiated his plea in bad faith by representing that it would file a motion for
> downward departure of Riojas's sentence pursuant to U.S.S.G. § 5K1.1, when it did
> not intend to do so.  However, where, as here, the Government retains its discretion
> to file a motion under U.S.S.G. § 5K1.1, absent an unconstitutional motive, its
> decision not to file such a motion is not a breach of the plea agreement.  *See Id.*
> Riojas does not allege any unconstitutional motive on the part of the Government.
> Consequently, Riojas has not shown plain error with respect to his claim that the
> Government breached his plea agreement by not filing a motion under U.S.S.G. §
> 5K1.1.  *See United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001).  (Document
> No. 5157, p. 2-3) (footnote omitted)

On May 26, 2004, within one year of his conviction being final, Riojas timely filed § 2255

Motion to Vacate, Set Aside, or Correct Sentence (Document No. 5357).   He subsequently filed a

supporting memorandum. (Document No. 5472).  In response, the Government has filed an Answer

and a Motion for Summary Judgment (Document No. 5454), to which Riojas has filed a Response (Document No. 5508).  Also, Riojas filed a Motion to Amend and Supplement his pending § 2255 motion.  (Document No. 5438), arguing that his sentence must be reversed based on the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  The Government filed a response to Riojas' Motion to Amend and Supplement. (Document No. 5453).

## II.     Discussion

Riojas, through his § 2255 motion and Memorandum, raises numerous and repetitive claims relating to his life sentence.  Most of the claims are couched in terms of ineffective assistance of counsel.  Even those claims that are not directly related to his ineffective assistance of counsel claims (prosecutorial misconduct and court error) also relate to the length of his sentence.  To the extent Riojas raises herein a challenge to the validity of his guilty plea that he raised in his direct appeal, no relief is available.  A claim that was raised and litigated on appeal cannot be relitigated in a subsequent § 2255 proceeding.  *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."), *cert. denied*, 476 U.S. 1118 (1986); *see also Moore v. United* States, 598 F.2d 439, 441 (5th Cir. 1979) ("The appellate process does not permit reruns."); United *States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).  Moreover, to the extent Riojas challenges the validity of his guilty plea on grounds not asserted in his direct appeal, a review of the record shows that no relief is available on his claims.

According to Riojas, he received ineffective assistance of counsel regarding the decision to plead guilty.  Riojas claims that he pleaded guilty based on counsel's assurance that he would not be sentenced in excess of 20 years and would most likely receive a sentence of 13-15 years.  Riojas claims that it was his understanding that his cooperation with the Government would be limited to

discussing his own culpability and not that of others charged in the conspiracy.  Also, Riojas claims that his counsel failed to conduct a proper investigation, and that had counsel been more involved in the case, counsel would have known that the Government had reliable information concerning Riojas' activities while in jail, namely, that he was setting up drug deals and influencing co-defendants, and based on this information counsel should not have encouraged Riojas to debrief. Also, Riojas contends counsel should have known that the Government never intended to file a 5K1 motion or comply with written plea agreement, and wanted Riojas to receive a life sentence.  In addition, Riojas alleges that counsel failed to advise him that a guilty plea to the CCE count would result in a mandatory life sentence because the minimum and maximum sentence was the same for the CCE count, life imprisonment.  Riojas further argues that counsel was ineffective for failing to negotiate a plea to a lesser charge.  In addition,  Riojas  raises several ineffectiveness of counsel claims based on counsel's lack of understanding of the sentencing guidelines, and in particular, relevant conduct and sentencing enhancements.  In particular, Riojas alleges that his counsel failed to advise him about the sentencing impact of his role in the offense and drug quantity.  Riojas also claims that counsel should have argued that since the conspiracy began before the effective date of the sentencing guidelines, he should be sentenced as a pre-guideline case.  Also, Riojas claims that counsel should have protected his right to appeal.  Finally, Riojas contends that his plea counsel should have moved to dismiss the Indictment based on the excessive sentencing delay.  Lastly, Riojas claims that he was prejudiced by counsel's failure to turn over his file to his sentencing counsel, Mr. Lansden.

In addition, Riojas alleges his sentencing and appellate attorney, Mr. Lansden, was ineffective because he  failed to argue in the Motion to Withdraw Guilty Plea and on appeal that

there had been a renumbering of the rules regarding withdrawal of guilty pleas from Fed.R.Crim.P. 32(e) to Fed.R.Crim.P. 11(d),  and that there was a *Richardson* violation.

Riojas also alleges that the Court erred in its admonishments at the guilty plea regarding the statutory minimum for the CCE offense, the imposition of the fine and the right to a jury in the forfeiture proceeding.  Lastly, Riojas alleges prosecutorial misconduct.

### A.      Procedural Bar

Riojas only raised the issue of the Court's denial of his Motion to Withdraw Guilty Plea in his direct appeal.  Therefore, unless Riojas can show that some external impediment prevented him from raising his claims on direct appeal, *McCleskey v. Zant*, 499 U.S. 467, 497 (1991), and that there was prejudice severe enough to "infec[t] his entire trial with error of constitutional dimensions," *Frady*, 456 U.S. at 170, all other grounds for § 2255 relief are procedurally barred in this Court.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal and actual prejudice resulting from the alleged errors. *United States v. Placente,* 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet,* 81 F.3d 585, 589 (5th Cir. 1996) ("When raising  issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen,* 47 F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under § 2255 'may not do service of an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting

from the error.") (internal citations omitted); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude ... and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).  Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent. *Bousley v. United States,* 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' or actual 'prejudice' ... or that he is 'actually innocent.'").  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 614, 118 S.Ct. at 1611.

Ineffective assistance of counsel can constitute cause for a procedural default under certain circumstances. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however, the assistance must have been so ineffective as to violate the Federal constitution. *Id*. Riojas has not established cause and actual prejudice or that he is actually innocent, and his claims therefore are procedurally barred.  Even if the claims were not procedurally barred, no relief is available on the merits of the claims.

### A.  Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.  *Strickland*, 466 U.S. at 687.  Deficiency is judged by an objective reasonableness

standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id.* at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate

representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).  The court's role "under § 2255 is not to audit decisions that are within the bounds of professional prudence." *United States v. Molina-Uribe*,  429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied*, (2006).  In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition.  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Thus, Riojas  "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel.  *United States v. Phillips*, 210 F.3d 345, 347 (5th Cir. 2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 476-477 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *United States v.* Reinhart, 357 F.3d 521, 524 (5th Cir. 2004); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also* *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "a reasonable attorney has an obligation to research facts and law, or make an

informed decision that certain avenues will not prove fruitful.  Solid meritorious arguments based on directly controlling precedent should be disclosed and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.  Moreover, in a situation where there is no directly controlling precedent, "it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed.  But failure to raise a discrete, purely legal issue, where the precedent could not be more pellucid and applicable, denies adequate representation."  *Id.* at 463 n. 7.  Simply put, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success."  *Rose v. Johnson,* 141 F.Supp. 2d 661, 704-705 (S.D.Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues."  *May v. Lynaugh,* 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  *Grey v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins,* 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an effective assistance of appellate counsel claim, the court must determine the probable outcome of the appeal had counsel's performance not been deficient.  *Williamson,* 183 F.3d at 463.  "Prejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable."  *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal could have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result."  *Id.*

at 474-475.  "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S.
at 690.  Accordingly, there is a strong presumption that counsel's actions are reasonable.  *Id.* at 689.

As to the specific examples of ineffective assistance of counsel which Riojas cites to in
support of his ineffectiveness claims, the record either affirmatively shows that Riojas' counsel was
not deficient or there is no evidence that the alleged errors prejudiced Riojas within the meaning of
*Strickland.*  Riojas cites the following specific examples to illustrate counsel's ineffectiveness:
failure to formulate a viable strategy;  failure to negotiate a fair and equitable plea; failure to obtain
a binding plea agreement; failure to keep Riojas informed about this case; failure to communicate
with the AUSA, which conversation would have revealed that the Government had reliable
information about Riojas' activities while in prison and how such activities could impact his
sentencing; failure to properly advise about the plea and in particular, about debriefing; failure to
advise Riojas that the Government had no intention of a sentence of less than life; failure to advise
that the minimum and mandatory sentence for the CCE count was the same, life imprisonment;
failure to negotiate a plea to a lesser charge; failure to protect his right to appeal; failure to
understand and to explain the sentencing guidelines, and in particular, relevant conduct; failure to
argue that Riojas should be sentenced pre-guidelines; and failure to turn over his file to sentencing
counsel.  As to sentencing counsel and appellate counsel, Riojas cites  to the failure to argue both
the change in the Federal Rules of Criminal Procedure, and with respect to the CCE charge, to argue
that the three predicate offenses had not been articulated, and the failure to argue *Richardson v.
United States*, 526 U.S. 813 (1999) in his Motion to Withdraw Guilty Plea and to raise the claims
on appeal.  The record either affirmatively shows that Riojas' counsel  was not deficient or there is
no evidence that the alleged errors prejudiced Riojas within the meaning of *Strickland.*   Nowhere

in the record is there evidence that Riojas was somehow prejudiced by his counsel's performance, at any stage of the proceedings.

Riojas claims that his guilty plea was not knowing because it was based on counsel's misrepresentations about a sentence of 13 to 15 years, and no more than 20 years. According to Riojas, his counsel failed to explain what was expected of Riojas when he debriefed, and the consequences of not being truthful, and failed to take into account the effects of relevant conduct in calculating his guideline sentence. Riojas contends that he would not have pleaded guilty had he known that the conduct of dismissed counts and that of co-conspirators would be considered for sentencing purposes. Riojas further contends that counsel failed to advise of possible increases to his base offense level for his role in the offense and for obstruction of justice. In particular, Riojas faults counsel's failure to communicate with the AUSA about the case. According to Riojas, had counsel done so, he would have learned that the Government was aware of Riojas' activities in jail, which included setting up drug deals and attempting to influence unindicted co-conspirators, and that based on these activities, the Government had no intention of filing a 5K1 motion. He further argues he pleaded guilty based on counsel's assurance that he would be held responsible for his own actions and that any debriefing would involve his *own* involvement in the drug trafficking activities and did not require him to discuss other charged members of the drug conspiracy, and also on counsel's assurance that he would receive a three level reduction for acceptance of responsibility, and that the Government would file a 5K1.1 motion. Riojas contends that because his counsel failed to explain the plea process, counsel "set him up and left him to fend for himself" (Document No. 5508, p. 5), and he should have advised him against providing false information to the Government, because had counsel done so, Riojas would not have "fabricated a story line about a drug quantity and his assets, and in so doing, locked himself into an enhancement for obstruction of justice and a life sentence."

(Document No. 5472, p. 7).  Simply put, "it is [Riojas'] position that Mr. Reyna falsely led [him] to believe he could, by pleading guilty, come clean with his part in the CCE and the conspiracy to launder money, voluntarily agreeing to the forfeiture of all his properties and assets, [and] he would receive a sentence of not more than fifteen years.  This is what [Riojas] understood was the benefit he would receive in exchange for his guilty plea." (Document No. 5472, p. 21).  Riojas contends that because he only spoke some conversational English and lacked a high school education, he relied on his attorney's assurances regarding his sentence and has been prejudiced by a life sentence, which is substantially longer than he anticipated.  According to Riojas, his attorney should have known that the Government never intended to file a 5K1 motion, and as a result, Riojas would obtain no benefits by pleading guilty.

"Solemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding."  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).  However, a defendant such as Riojas may obtain habeas relief on the basis of misrepresentations as to what a sentence will be, notwithstanding statements made in open court, by showing the exact terms of the alleged promise, when, where and by whom the promise was made, and the precise identify of an eyewitness to the promise.  *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).  Consequently, absent independent evidence that disputes Riojas' testimony which he gave during his Rearraignment, his ineffective assistance of counsel claims based on counsel's erroneous estimate of his sentencing exposure fails.   Here, because Riojas has failed to come forward with credible, independent evidence, which would dispute his sworn statements at his Rearraignment hearing, his claims fail.

Moreover, regardless of whether Riojas' attorney knew of, or discussed with him, his relevant conduct and the application and effect of relevant conduct in calculating his sentence, and possible increases to his base offense level for his role in the offense and for obstruction of justice, and the debriefing process, given Riojas' sworn statements at his Rearraignment hearing, which are entitled to the presumption of truthfulness, Riojas has not shown that he was unaware that he could be sentenced to more than twenty years' imprisonment.   For example, at Riojas' Rearraignment Hearing, he acknowledged, under oath, that the penalty for money laundering conspiracy (count 5) was a maximum of twenty years, and that as to the CCE count (count 89), he faced a minimum prison term of 20 years, and a maximum term of life imprisonment.  (Document No. 2713, pp. 16-20).  In addition, Riojas stated that no representations or promises had been made as to his sentence, that *only* the Court would determine his sentence he would receive after receiving and reviewing the PSR and objections made by Riojas to the PSR, and that he could not withdraw his plea if his sentence was more severe than he expected.  (Document No. 2713, pp. 23-25).  Riojas repeatedly acknowledged that he understood that no one could tell him with specificity the length of the sentence that would be imposed by the Court and that his sentence would be determined by the Judge *only*.  Similarly, the written Plea Agreement stated the minimum and maximum penalties for the offenses to which Riojas was pleading guilty, that his sentence would be imposed in accord with the Sentencing Guidelines, that the Court could impose *any sentence* within the statutory maximum, that the sentence to be imposed was within the discretion of the court, and that imposition of the maximum sentence would not be grounds to withdraw his plea.  (Document No. 2645, ¶¶ 2, 8).  As such, even if Riojas' counsel had erroneously represented that he would receive a sentence of 13 to 15 years by entering into the plea agreement, Riojas, nonetheless, was aware when he entered the Plea Agreement and at the time of his Rearraignment hearing, that his sentencing exposure was a

mandatory minimum sentence of 20 years or 240 months, and could be life imprisonment.   As to

Riojas' contention that the minimum and mandatory penalty for the CCE offense were the same, life

imprisonment, the record belies his contention.   The written plea agreement clearly states that the

mandatory minimum for the offense was 20 years and the maximum penalty was life imprisonment.

Similarly, at his Rearraignment Hearing, the Court advised Riojas of the penalties.   Riojas has not

shown that his attorney mislead him about the possible penalties he was facing.   Likewise, the record

refutes Riojas' contention that the Government never intended to comply with the plea agreement

and was predisposed to a life sentence.   Contrary to Riojas' allegations, neither the written Plea

Agreement nor the transcript of the Rearraignment Hearing refer to a predetermined sentence of life

imprisonment.   Instead, the record shows that there was no sentencing recommendation attached to

the potential 5K1.1 motion.   Rather, no decision had been made by the Government concerning

whether Riojas had provided substantial assistance, and that such a determination would not be made

until *after* Riojas had debriefed with the Government.   Riojas testified at his Rearraignment that he

agreed with the Government's summary of the terms of the plea, that he had gone over the agreement

with his counsel and understood the terms thereof, and had no questions relating to the agreement,

which required him "to provide full and truthful responses to all questions asked of him."

(Document No. 2645).   To the extent that Riojas suggests his counsel should have anticipated that

he would continue his drug trafficking activities while incarcerated and therefore not be in a position

to provide "full and truthful" responses at his debriefing, Riojas has not alleged that counsel was in

any way aware of Riojas inability to comply with the plea agreement.   Counsel is not required to be

clairvoyant, and as a result, is not required to anticipate the future criminal activities of a client.   *See*

*Sharp v. Johnson*, 107 F.3d 282, 290 n. 28 (5th Cir. 1997) (citing *Garland v. Maggio*, 717 F.2d 199,

207 (5th Cir. 1983) (holding that clairvoyance is not a required attribute of effective representation).

While Riojas argues that counsel should have warned him about debriefing, he does not allege or suggest that counsel was aware that Riojas would be less than candid at his debriefing or that Riojas did not understand what was meant by "truthful."  Riojas has presented only conclusory statements, without any factual or legal basis, to support his allegation that counsel should have warned him about debriefing.

To the extent that Riojas suggests he gained no benefits from the plea agreement, the record shows the Government agreed to dismiss the remaining counts against Riojas and to withdraw its previously filed information of Riojas' prior federal conviction for possession with intent to distribute, agreed not to oppose a three level reduction for acceptance of responsibility, if recommended by Probation, and most important, it provided for the potential of a 5K1.1 motion for downward departure based on substantial assistance, all in exchange for Riojas' guilty plea, and forfeiture of assets.  Contrary to Riojas' allegation, the plea agreement provided the potential for a less harsh sentence.  Riojas confuses the Government's position concerning his truthfulness at his debriefing and the impact it had on the Government's discretion to file a 5K1.1 motion with its position at the time of his Rearraignment. Given the exchange between Riojas and the Court at his April 17, 1998, Rearraignment Hearing, which leaves no doubt that Riojas knew he faced up to a life sentence, and the explanation of the sentencing process, and in particular, that his sentence would not be known until the sentencing hearing, Riojas has not shown that simply because his counsel anticipated a substantially shorter sentence he was prejudiced within the meaning of *Strickland*. Riojas has failed to demonstrate that his guilty plea was not knowing, voluntary, and intelligent, and has likewise failed to overcome the presumption under *Strickland* that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

strategy." *Strickland*, 466 U.S. at 689. (quotations omitted). Even if counsel had predicted a much lesser sentence, Riojas' reliance on that sentencing estimate would have been unreasonable given the numerous warnings he received at his Rearraignment that the maximum sentence for the CCE offense to which he was pleading guilty was life. By pleading guilty, Riojas had the potential for a less harsh sentence given that the Government dismissed the remaining counts and withdrew its previously filed information concerning Riojas' prior federal conviction, the potential for a three level reduction for acceptance of responsibility, and the potential for a downward departure under 5K1.1. In contrast, had Riojas gone to trial, it is highly likely that the jury would have found him guilty, based on the evidence, and there would have been no chance of a reduction based on his cooperation, and his sentence would have been enhanced because of his prior federal conviction. As such, counsel's initial estimate of 13 to 15 years was reasonable, given that various factors could affect the final sentence. "A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence." *Daniel v. Cockrell,* 283 F.3d 697, 703 (5th Cir. 2002). "In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands." *Id*. (citing *Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993). (Defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel.") "Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on a defense counsel's inaccurate *prediction* that a lesser sentence would be imposed." *Daniel*, 283 F.3d at 703-04 (emphasis in original) (citations omitted). Given the potential sentencing benefits Riojas gained by pleading guilty to two counts, Riojas has not shown that counsel's performance fell below that of *Strickland* in negotiating a fair and equitable plea.

Moreover, to the extent that Riojas argues that counsel should have negotiated a plea to a lesser charge, upon this record, there is no indication that the Government would have been willing to enter such an agreement, especially since several of Riojas' co-defendants pleaded to similar counts, not lesser counts.

As to Riojas' contention that counsel should have obtained a binding plea agreement, the record shows that even had the Government agreed to a particular sentencing recommendation, such recommendation would not be binding on the Court.  Indeed, Riojas was repeatedly advised by Judge Harmon that any recommendation by the Government concerning a sentence was a recommendation and that any sentencing determination would be made by the Court, not the Government.

As for Riojas' claim that he was prejudiced by Mr. Reyna's failure to provide Riojas' sentencing counsel, Mr. Lansden, his file, even assuming that Mr. Reyna could have and should have provided Riojas' file to Mr. Lansden, Riojas has not shown he was prejudiced by Mr. Reyna's actions.  The record shows that sentencing counsel filed written objections to the PSR, and filed a Motion to Withdraw Guilty Plea.  Because there was no resulting prejudice within the meaning of *Strickland*, no relief is available on this ineffectiveness claim.

As to Riojas' allegations that he received ineffective assistance of counsel because Mr. Reyna did not argue that Riojas' case should be considered a pre-guidelines case inasmuch as the conspiracy to which he pleaded guilty originated in 1986, one year before the guidelines were enacted, the Fifth Circuit rejected the identical arguments in *United States v. White*, 869 F.2d 822 (5thCir. 1989).  Counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).  Likewise, counsel is not required to make futile motions or objections desired by his client. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990), *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  As such, this claim fails.

As to Riojas' claim that his counsel was ineffective because he failed to argue a violation of the Speedy Trial Act based on the four year delay between his plea and sentencing, during which time the probation office was able to build a stronger case against defendant, even assuming that counsel could have and should have made such an argument, Riojas has not shown he was prejudiced within the meaning of *Strickland*. "The constitutionally guaranteed right to a speedy trial applies to sentencing. We review sentencing delays under *Barker v. Wingo*, [407 U.S. 514 (1972)] for length of delay, prejudice, whether the defendant asserted his right, and the reason for delay." *United States v. Abou-Kassem*, 78 F.3d 16, 1671 (5th Cir. 1996). Here, the gist of Riojas' speedy trial argument relates to the calculation of his sentence in the PSR, and the discretionary decision by the Government not to file a 5K1.1 motion. Riojas and seventy-eight others were indicted a complex case, which spanned a ten year investigation. The sixth superceding indictment charged various defendants with narcotics distribution, money laundering, conspiracy to evade currency reporting requirements, failure to file tax forms, aiding and abetting the use of a communication facility, aiding and abetting travel in foreign and interstate commerce, conspiracy to travel in aid of a racketeering enterprise, conspiracy to obstruct justice, obstruction of justice, and continuing criminal enterprise. Because of the complexity of the case, there was a delay between Riojas' rearraignment and sentencing. However, even assuming that Riojas had been sentenced sooner, his guideline sentencing range would have been calculated in the same manner, and the Government would not have moved for a downward departure under 5K1. As such, Riojas has not shown he was prejudiced within the meaning of *Strickland* by counsel's failure to object to the sentencing delay, and this ineffectiveness claim fails. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) (Counsel is not deficient for failing to argue a meritless point.); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument cannot form the basis of a successful

ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

As to Riojas' claim that his sentencing counsel and appellate attorney, Mr. Lansden, was ineffective because he failed to argue in his Motion to Withdraw Guilty Plea and on appeal that the rule governing a motion to withdraw a guilty plea had moved from Fed.R.Crim.P. 32(e) to Fed.R.Crim.P. 11(d), because the substance of rule remained the same, counsel was not ineffective in failing to raise this claim before the district court or on appeal given that both versions required a showing of a "fair and just reason," which the district court concluded Riojas had failed to do, and the Fifth Circuit affirmed that decision.  Indeed, with respect to the change in numbering, the Fifth Circuit Court of Appeals wrote:  "the new and old versions of the rule do not differ substantively." (Document No. 5157, n. 2).

Riojas further alleges that counsel was ineffective because he failed to argue in the Motion to Withdraw Guilty Plea and on appeal that his guilty plea was invalid on the basis that it was contrary to the holding of *Richardson v. United States*, 526 U.S. 813 (1999), in which the Supreme Court held that the jury must be instructed that it has to reach a unanimous verdict on each of the specific violations that make up the continuing series of violations, and he further alleges this claim should have been raised on appeal.  Riojas reliance on *Richardson* is misplaced because he pleaded guilty and therefore he was not entitled to a *Richardson* jury instruction.  In addition, to the extent that Riojas suggests that there was no showing that he had participated in a "continuing series of violations" of the drug statutes, 21 U.S.C. § 848(c), count 89 identified the continuing series of violations as the crimes set forth in counts 1, 3, 4, 7, 10, 24-26, 85, 86, 109-112, 113-118, 135 & 143, which were incorporated into count 89 by reference.  Also, Judge Harmon advised Riojas of the elements of the CCE count at his rearraignment, and Riojas testified that he understood the

elements of the offense to which he was pleading guilty. Because Riojas was fully advised of the elements of the CCE offense, there was no legal or factual basis to raise a *Richardson* claim in his motion or on appeal.

Riojas next alleges that appellate counsel was ineffective for failing to argue that there was "collusion" between plea counsel and the government concerning his sentence. Riojas has presented only conclusory statements, without any factual or legal basis, to support his allegation. As such, appeals counsel was not ineffective for failing to raise this claim on appeal. "Appellant counsel is not deficient for not raising every non-frivolous issue on appeal." *Reinhart*, 357 F.3d at 524.

Finally, Riojas alleges that based on the cumulative errors of counsel, he was denied effective assistance of counsel. Relief is available for cumulative errors that are of a constitutional dimension. *See, e.g, Coble v. Dretke*, 444 F.3d 345 (5th Cir. 2006) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). Because Riojas has failed to show that counsel's performance was deficient in any respect, he is not entitled to relief on this claim.

**B. Court Error Claims**

Riojas alleges that the Court erred in its admonishments at his Rearraignment by improperly advising him that the CCE count carried a statutory minimum of twenty years, when in fact, Riojas argues it was life, by failing to advise him that it intended to impose a fine or could impose a fine, and by failing to advise him that he was entitled to have a jury determine whether his properties are forfeitable to the government prior to accepting his guilty plea. Also, Riojas alleges that the confidential sentencing memorandum biased the Court against him and influenced the Court's decision regarding his Motion to Withdraw his Guilty Plea. Although Riojas did not raise these claims in his direct appeal, and as such, the claims are procedurally barred, Riojas would not be entitled to relief on his claims in any event because the record shows that at his Rearraignment on

April 17, 1998, the Court engaged in an extended colloquy, which included a summary of the possible penalties, and that Riojas had agreed to the forfeiture of assets derived from his drug trafficking activities.

As to the confidential sentencing memorandum, the PSR was provided by the Probation Office to both the Government and Riojas, and both were given an opportunity to file objections. At his sentencing, Judge Harmon questioned Riojas about whether he had reviewed the PSR and had any objections, in addition to those raised by counsel.  None of the information relied upon by the Court in sentencing was kept from the parties.

Finally, Riojas alleges that the Court did not articulate acceptance of his guilty plea.  Again, the record refutes this allegation.  At the conclusion of the Rearraignment hearing, Riojas' plea was accepted by the Court.  (Document No. 2713, p. 53).

### C.  Prosecutorial Misconduct Claims

Riojas alleges the Government never intended to honor the plea agreement, that it submitted "ex parte confidential sentencing memorandum" to the court, and colluded with defense counsel to deprive him of his rights.  The gist of Riojas' arguments relate to the decision by the Government not to file a 5K1.1 motion for downward departure.  Riojas contends that the Government never intended to do so, and his counsel was aware of this.   As discussed above, the record does not support Riojas' allegations.  The record shows that Riojas was aware, at the time he entered his guilty plea, that there was no absolute guarantee that the Government would file such a motion. Indeed, his written plea agreement states that there was the *potential* for such a filing.  Moreover, Riojas was aware that even if such a motion were filed, his sentence would be determined by Judge Harmon and she was not bound by any recommendations.   Riojas has not shown that the Government, alone or with counsel, attempted to violate his constitutional rights.

As to Riojas' claim that the Government prepared the confidential sentencing memorandum, the docket sheet reveals that the memorandum was prepared by Probation Officer who drafted the PSR, and that the confidential sentencing memorandum was provided only to the Court, and not to the Government or Riojas.

Finally, with respect to Riojas' allegations that the Government, Court and counsel "tacitly or impliedly colluded to keep him detained in the county jail," as discussed above, this was a complex, criminal action and any delays between Riojas' Rearraignment and sentencing, were due to the complexity of the case.

In sum, Riojas' claims of trial error and prosecutorial misconduct are procedurally barred because they were not raised on direct appeal. Additionally, the claims are meritless.

## II. Motion(s) to Amend to assert *Blakely/Booker* claim

On November 10, 2004, Riojas filed a Motion to Amend and Supplement § 2255 (Document No. 5438), in which he suggests that he should be allowed to argue that his sentence enhancement was unconstitutional in light of *Blakely*. The Government has responded. (Document No. 5453).

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, and the law is clear that Rule 15 applies to amendments of § 2255 motions. *See United States v. Saenz*, 282 F.3d 354. 356 (5th Cir. 2002) ("Every circuit that has addressed this issue agrees the [AEDPA's] one year statute of limitations does not render Rule 15 inapplicable to federal habeas proceedings."). "Under Fed.R.Civ.P. 15(c), a district court may in its discretion, permit an amendment which clarifies or amplifies a claim or theory in a timely filed § 2255 petition after AEDPA's one year statute of limitations has expired." *United States v. Thomas*, 221 F.3d 430, 433-434 (3rd Cir. 2000). Conversely, an amendment under Rule 15(c) should not be allowed where the movant seeks to add an entirely new claim or new theory of relief. *Id.* "An amended habeas petition does not relate back

(and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644 (2005). Because *Blakely/Booker* is a new theory of relief, supported by facts that differ in type and time from his original § 2255 motion, Riojas is not entitled to amend his § 2255 motion under Rule 15. Moreover, even assuming that Riojas' claim under *Blakely/Booker* related back to his § 2255 motion, Riojas should not be allowed to amend his original § 2255 motion because *Blakely/Booker* does not apply retroactively to cases on collateral review. As a result, the proposed amendment would be futile.

Riojas argues that the District Court's sentencing determination is contrary to the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker,* 543 U.S. 220 (2005) because the court, and not a jury, enhanced his sentence. In *Blakely*, the Supreme Court invalidated the State of Washington's sentencing scheme, whereby a judge could possibly sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts. *Id.* at 2538. In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 490. The Supreme Court in *Blakely* expressly declined to state whether its decision applied to the Federal Sentencing Guidelines. *Blakely*, 542 U.S. 296.

The Supreme Court, in its intervening decision, *United States v. Booker,* 543 U.S. 220, extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was: "no distinction of constitutional significance between the Federal Sentencing Guidelines" and the state sentencing scheme at issue in *Blakely. Id*. In keeping with its earlier decision in *Apprendi*, the

court also stated: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proven to a jury beyond a reasonable doubt." *Id.* To remedy the guidelines' Sixth Amendment problem, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1), which required mandatory application of the guidelines. *Id.* at 756-57, 765. As a consequence, the guidelines are now advisory in all cases. *Id.* at 757.

Because *Blakely* and *Booker* were decided after Riojas' conviction in the instant case became final, it must be determined as an initial matter whether *Blakely/Booker* should be retrospectively applied. The Supreme Court has not stated whether the rule announced in *Blakely* and *Booker* applies retroactively to cases on collateral review.[5]   However, the Fifth Circuit addressed this issue as to initial § 2255 motions, and has concluded that *Booker* does not apply retroactively to an initial § 2255 motion.  *United States v. Gentry,* 432 F.3d 600 (5th Cir. 2005). Because *Booker* does not apply retroactively in initial § 2255 proceedings, Riojas is not entitled to relief in this proceeding on his  *Blakely/Booker* claims.

## V.  Conclusion and Recommendation

Based on the foregoing, and the conclusion that no relief is available to Riojas, it is

RECOMMENDED that Movant Ricardo Riojas' § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 5357), and Motion for Leave to Amend  and Supplement § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 5438) both  be DENIED, that

---

[5] The United States Supreme Court has granted *certiorari* in *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2352 (June 5, 2006) and will address the issue of *Blakely* retroactivity.

Government's Motion for Summary Judgment (Document No. 5454) be GRANTED and that this § 2255 proceeding be DISMISSED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 9th day of  November, 2006.


Frances H. Stacy
United States Magistrate Judge